## JANUARY TERM, 1893.

MARTIN, PLAINTIFF IN ERROR, v. McCARTHY, DEFENDANT
IN ERROR.

| 3 | 37 |
|---|---|
| 36S | 435 |

1. INTERVENTION.

Any person who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both, may, intervene in the action.

2. SAME—EFFECT OF DISMISSAL.

A voluntary dismissal of an intervention, without any agreement of the parties or other circumstances tending to show that such dismissal was intended as a final disposition of the dispute between the parties, is not a bar to another action by the intervenor.

3. NONSUIT.

A voluntary nonsuit taken by the plaintiff at any time before trial does not estop him to bring a new action.

*Error to the District Court of Pueblo County.*

Messrs. DIXON & DIXON and Messrs. URMY & CRANE, for plaintiff in error.

Messrs. ROGERS, CUTHBERT & ELLIS, for defendant in error.

RICHMOND, P. J., delivered the opinion of the court.

November 26, 1890, Frank C. Taft made an assignment for the benefit of his creditors to Edmund H. Martin, plaintiff in error. Prior to the assignment, the sheriff of Pueblo county, T. G. McCarthy, pursuant to a writ of attachment sued out, seized a stock of merchandise and had the same in custody at the time of the assignment. The assignee demanded possession of the stock, which was refused. Thereafter Beifeld & Co. instituted an attachment proceeding in the district court of Arapahoe county against Taft and the

sheriff of Pueblo county and levied upon the property covered by the assignment and former attachment writ. Subsequently Martin filed a plea of intervention which Beifeld & Co. answered. Before the trial of the plea of intervention either on the pleadings or the merits and after the order of sale had been entered, Martin voluntarily dismissed his intervention proceeding with the consent of the court and subsequently commenced an action for damages against the sheriff. Trial was had in the county court and judgment rendered in favor of Martin for the sum of $1,542.23. An appeal was taken to the district court where, after the evidence offered by plaintiff had been received, defendant moved the court to dismiss the action on the ground that Martin had two remedies, and having elected to claim the property as intervenor in the original attachment suit, he thereby defeated his right to institute an action for the value of the goods. The motion to dismiss was sustained. The only question involved in this appeal is, did the action of Martin in instituting the intervention proceedings and subsequently dismissing, defeat his right to institute another action.

The code provides that any person shall be entitled to intervene in an action who has an interest in the matter in litigation, in the success of either of the parties to the action, or an interest against both * * *.

We do not think that this or any other provision of the code makes it obligatory upon a party to intervene in proceedings where the title to property or the possession thereof is involved, although he may know of the proceedings, be the owner or entitled to the possession. It is clearly a right that he may exercise, and one he could not have exercised unless conferred by statute.

By the code it is also provided that an action may be dismissed or a judgment of nonsuit entered in the following cases:

First. By the plaintiff himself at any time before trial upon the payment of costs if a counterclaim has not been made * * *. Session Laws, 1887, p. 149.

By the record in this case we learn that this action of dismissal was voluntarily made by the attorneys for the intervenor. It was not the result of an agreement between the parties nor did it amount to a *retraxit.* It was nothing more than a discontinuance, and after a most thorough examination of all the authorities at our command, we have reached the conclusion that the dismissal under the circumstances did not defeat his right to institute another action.

In *Freas et al. v. Engelbrecth et al.,* 3 Colo. 377, this language is used: * * * "It was never heard that judgment of *non pros.* at law, or the dismissal of a bill in equity, expressly for default of prosecution, would bar another suit at law, or a new bill in equity for the same cause. The judgment or decree it is said is but 'the blowing out of a candle which a man may light again at his pleasure.'"

In the case of *Parks v. Dunlap,* 86 Cal. 189, Works, J., in commenting upon a similar proposition says: "The contention of the appellant is, that the dismissal as to him, in the former action, was a *retraxit,* amounted to an adjudication in his favor, as to the validity of his mortgage, and is a bar against the respondents to any defense against it. Conceding, however, that the question in litigation in the former action was the same now presented, it is well settled that the voluntary dismissal of an action, without any agreement of the parties or other circumstances tending to show that such a dismissal was intended as a final disposition of the dispute between the parties, is not a bar to another action." *Merritt v. Campbell,* 47 Cal. 542 ; *Crossman v. Davis,* 79 Cal. 603.

In the case of *The First National Bank of Ft. Dodge v. Haire et al.,* 36 Iowa, 443, it was held that " where a plaintiff by his counsel enters a dismissal of his cause in writing on the back of the petition, with the manifest intent of dismissing it, and both parties act accordingly, the action will be deemed dismissed, and its pendency cannot be relied upon to defeat a subsequent action for the same cause.

Where a suit is discontinued after judgment the adjudica-

tion concludes no one and is not an estoppel or bar in any sense. *Loeb v. Willis*, 100 N. Y. 231.

In *National Water Works Company v. The School District*, 23 Mo. Court of Appeals, 227, it was held that a "nonsuit is, in effect, a dismissal of the action, and this may be done at any time before the final submission for the verdict of the jury. A voluntary nonsuit, taken by the plaintiff at any time before the judgment, will not estop him to bring a new action. Much more so should this rule apply where the nonsuit is enforced by an adverse conclusive ruling of the court."

The plaintiff by entering a nonsuit retains the advantage of bringing another action, and this he can doubtless do when the nonsuit is ordered by the court. *Mason v. Lewis*, 1 G. Greene's Reports, 496. See, also, *Smith v. Ferris*, 1 Daly, 18 ; *Lambert v. Sandford*, 2 Blackford, 137 ; 18 Amer. Dec. 149.

A decree dismissing a bill is no bar to a subsequent suit, unless it is shown that there was an absolute determination that the party had no title, and that the matter is *res adjudicata*. *Chase's Case*, 1 Bland's Ch. 206 ; 17 Amer. Dec. 277. * * * It is conceded that a previous suit against one or more is no bar to a new suit against others even though the first suit be pending, or have proceeded to judgment when the second is brought. The second or even a subsequent suit may proceed until a stage has been reached in some one of them at which the plaintiff is deemed in law to have either received satisfaction, or to have elected to rely upon one proceeding for his remedy to the abandonment of the others * * *. Cooley on Torts, p. 157.

We could multiply authorities in support of our position, but we deem it unnecessary to do so. There was no judgment upon the merits in the controversy between the attaching creditor and intervenor. No agreement entered into nor personal appearance on the part of the intervenor which would amount to a *retraxit*.

The contention of defendant in error that the parties having elected to file a petition in intervention, whereby they

claimed the possession of the property in controversy as against all the parties, are estopped from bringing this action, we cannot sanction. All of the cases cited in support of their contention do not present the question as in the case at bar. There is no doubt that there are certain acts or omissions of a party by which another is injured, from which a liability results to make compensation in damages. In such cases the law implies a promise to pay the damages and the injured party may treat the action as arising from the tort, or, by waiving the tort, sue upon an implied contract by setting forth the facts from which the law infers a promise. This right exists for the wrongful taking or conversion of chattels, things in action or money; the wrongful use of lands; appropriation of rents and profits; fraud of purchaser in obtaining goods on credit. Thus, when goods and chattels have been wrongfully taken or detained, and have been sold or disposed of by the wrongdoer, the owner may sue in tort for the damages or he may waive the tort and bring his action on the implied promise. Maxwell on Code Pleading, p. 581.

By the intervention proceedings Martin did not waive the tort, nor was it a complaint based upon an implied promise. In neither of the proceedings—the one now under consideration or the intervention—was or is there a waiver of the wrongful taking.

The single principle, upon which the entire doctrine of election rests, is very simple and is formulated by Mr. Pomeroy as follows:—" From certain acts or omissions of a party creating a liability to make compensation in damages, the law implies a promise to pay such compensation. Whenever this is so, and the acts or omissions are at the same time tortious, the twofold aspect of the single liability at once follows, and the injured party may treat it as arising from the tort, and enforce it by an action setting forth the tortious acts or defaults; or may treat it as arising from an implied contract, and enforce it by an action setting forth the facts from which the promise is inferred by the law." Pomeroy on Remedial Rights, § 568.

The New York cases cited are in keeping with this principle and in no sense militate against our conclusion. We think the court erred in sustaining the motion to dismiss the action.

The judgment must be reversed and the cause remanded for further proceedings.

*Reversed.*

On rehearing the following opinion was announced:

PER CURIAM. We have carefully examined the authorities submitted on the rehearing in this case.

At the time of writing the opinion our attention had not been called to cases wherein the exact propositions now under consideration had been discussed.

In the case of *Perrin v. Claflin*, 11 Mo. 13, it is held that " Where the goods of one are seized under an attachment against another, on an interpleader filed by the owner of the goods so taken, if the plaintiff in the attachment defend the interpleader, it will be evidence of his assent to the seizure by the officer, and such subsequent assent will render the plaintiff liable in trespass."

The general doctrine is that " One who is the owner of property attached to that of another, may either intervene in the suit to claim his property, or he may sue the sheriff or the purchaser without making himself a party to the attachment suit. When he has been adjudged the owner, he has his action against the sheriff for wrongful seizure " * * * . Waples on Attachment and Garnishment, p. 483.

The Supreme Court of Missouri in the case of *Clark v. Brett*, 71 Mo. 473, a case similar to the one now under consideration, say : " It is contended with plausibility, by defendant's counsel, that Clark, on the seizure of the goods by the sheriff, had his election to sue in trespass or replevin, or to interplead under the statute ; and that having elected to proceed under the statute, and obtained a judgment in his favor, he is precluded from resorting to any other remedy. The judgment rendered was for the recovery of the property

which had been sold under the order of the court, and the proceeds of sale were considerably less than the invoice price of the goods." Held that "The recovery of judgment by an interpleader in attachment proceedings, will be no bar to an action by the interpleader against the attaching officer for the wrongful seizure."

These authorities and others furnished by the plaintiff in error conclusively satisfy us that we should adhere to our opinion.