Putnam, J.
The undertaking of the bail at common law was, that they would pay the debt, if the principal did not, or if he did not surrender himself a prisoner ; and the plaintiff was obliged to elect whether he would proceed against the body or the property of the judgment debtor. If against the body, the plaintiff was obliged to notify the bail, by leaving the copias ad satisfaciendum at the sheriff’s office at least four days before the return day. This was considered as a demand upon them to surrender the principal, and superseded any farther inquiry for him. The bail were obliged to take notice of the proceedings, and to surrender the principal within the time prescribed by the rules of the Court. In default of which, and upon a return of non est inventus, the plaintiff proceeded against the bail by scire facias. If the principal should not be surrendered, the liability of the bail still continued.
For, if the plaintiff omitted to take out his execution within a year, he might by scire facias agairst the principal revive the judgment * *381 and the copias that should issue on such judgment, even if it did not issue for three years after the first *judg- [*436] ment, would be sufficient whereon to ground the proceedings against the bail.
The alterations, which have been made in this State, have not been intended to increase the liability of the bail. By the colonial laws,(1) they were discharged, unless the execution should be levied in thirty days from the judgment. And by the revised statute ói 1784, c. 10, they are not answerable on the scire facias, unless it should be served within one year from the first judgment.
Here no settled, rule is established, ascertaining the shortest time before the return day, in which it is requisite that the execution should be delivered to the officer. But the plaintiff must honestly endeavour to obtain satisfaction from the principal before he is permitted to have recourse against the bail. He must, therefore, at some reasonable time within the year, deliver his execution to an officer, to the end that the principal shall be arrested, if the plaintiff intends eventually to proceed against the bail.† If the plaintiff should fraudulently keep the execution in his own possession, so near to the end of the year, as that after the delivery the officer would not have any opportunity to find the body ; and should thus procure a return of non esl inventus; such proceedings would furnish the bail with a sufficient bar to the plaintiff’s scire facias. The bail may also obtain a discharge before judgment upon scire facias, by surrendering the principal according to the statute. So if the plaintiff should release the bail, or the principal, or waive his right to proceed against his body, the bail would be discharged.
Upon these principles we proceed to examine the sufficiency of the pleas in this suit.
As the liability of the bail is continued for the term of one year, the plaintiff may omit suing out his execution until the last quarter. And, if he should take out one or more executions before the last quarter, and keep them in his own possession until they were returnable, the bail would have no legal right to complain. Indeed he might be benefited ; because the plaintiff might levy some one of them upon property ;* and he could not be in a worse situation [*437] than he would have been in, if the original execution had been delayed until the last quarter. We are of opinion that the law did not, in this case, oblige the plaintiff to deliver the original execution to an officer ; that it was not necessary to have it returned non est inventus, or to have been delivered to the sheriff within thirty days from the judgment ; and that it is not a sufficient answer, that the principal abode in the county until the return day of the first *382 execution in this case. We are, therefore, of opinion that the first, second, third, and seventh, pleas in bar are bad.
The fourth and sixth pleas were probably grounded on the English practice of notifying the bail, by leaving the execution with the sheriff four days before the return day. But we have no such rule. Nor have we any rule requiring the plaintiff to give notice to the bail that the execution is in the hands of the sheriff. The law requires the plaintiff to use reasonable diligence to cause the body of the principal to be arrested ; and that must depend upon the circumstances of the case. It is sufficient that the execution be in the sheriff’s hands so long before the expiration of the year, as that he may have; by diligent inquiry, a reasonable time and opportunity to find the principal. We cannot say, that, in all cases, the law here requires it to be delivered four days before the return day ; or that the plaintiff is obliged to notify the bail of the delivery of the execution to the sheriff. If the plaintiff should be guilty of fraud, with a view to charge the bail, they will have an opportunity of making that defence to the jury.† We are, therefore, of opinion that the fourth and sixth pleas in bar are substantially bad ; and it is unnecessary to consider the special cause of demurrer assigned as to the former of them.
The fifth plea states that the defendant requested the plaintiff’s attorneys to deliver the original execution to an officer, that they refused, and at the same time declared that they did not wish to take the body in execution. And the plaintiff contends L *438] that this is bad for duplicity, namely, 1st, * that the plaintiff’s attorneys refused to deliver the original execution to an officer on request; and, 2dly, that they declared that they did not wish to take the body of the principal.
We shall consider this upon the ground that the plaintiff’s attorneys were authorized to do and say what they did ; and, therefore, precisely as if the plaintiff had acted for himself.
The rule of pleading touching this subject is, that, if the matter alleged be wholly foreign and impertinent, so that no allegation whatever on the subject was necessary, it must be rejected as surplusage ; and the allegation which is material shall not be vitiated by that which is immaterial. Utile per inutile non vitiatur. The first allegation is of this description. For, if it had been pleaded separately, it would have been bad on demurrer; and, if an issue to the country upon that fact had been joined, it would have been immaterial.
The other allegation, namely, that the attorneys of the plaintiff declared that they did not wish to levy on the body, may or may not be material, as a jury should find the fact. For those words maj *383 mean, either that the plaintiff intended to release, and did thereby release and discharge the bail; and, if so, they should have been pleaded, according to their legal effect, as a discharge ; or they may mean, not that the plaintiff meant to give up his remedy against the bail, but to express a disposition to procure a satisfaction of. the execution by any other lawful means, rather than by the levy of it upon the body of the principal. The declaration, in this sense of it, would be a warning to the bail of his continued liability, rather than a discharge from it. We cannot say that necessarily the allegation is material. We are, therefore, of opinion that this fifth plea is bad also. The cause will be committed to the jury, to try the issue in fact, which has been joined upon the eighth and last plea.

 Ancient Charters, &c., 193.

 Rice & vs. Carnes, 8 Mass. Rep 490. — Lane vs. Smith, 2 Pick. 281.

 Winchell vs. Stiltz, 15 Mass. Rep, 230.